**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5281-17T2

JULIA MORENO,

    Plaintiff,

v.

ILEANA LISSETH PULIDO
MONTOYA, MIGUEL
CENTENO, ALONZO RAWLS
and GPU ENERGY,

    Defendants.

_____

ILEANA PULIDO MONTOYA,

    Plaintiff,

v.

ALONZO RAWLS and
GPU ENERGY,

    Defendants.

_____

NATIONWIDE INSURANCE
COMPANY OF AMERICA and
NATIONWIDE INSURANCE

COMPANY OF AMERICA a/s/o
JULIA MORENO and ILENA
LISSETH PULIDO MONTOYA,

 Plaintiffs-Appellants,

v.

ALONZO RAWLS and
GPU ENERGY,

 Defendants-Respondents.
_____

Argued May 30, 2019 – Decided July 31, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-3240-13, L-3303-13, and L-3327-13.

George A. Prutting, Jr., argued the cause for appellants (Prutting & Lombardi, attorneys; Marilou Lombardi, on the briefs).

Stephen A. Rudolph argued the cause for respondents (Rudolph & Kayal, attorneys; Stephen A. Rudolph, on the brief).

PER CURIAM

 Appellant Nationwide Insurance Company of America (Nationwide) appeals from a February 19, 2016 order granting partial summary judgment to plaintiff Julia Moreno and defendant Ileana Lisseth Pulido Montoya in this

personal injury protection (PIP) reimbursement action requiring Nationwide to pay the statutory minimum amount of $15,000 per claimant under N.J.S.A. 17:28-1.4 (the Deemer statute), and ordering GPU Energy[1] to reimburse Nationwide the sum of $30,000. We affirm but remand to the trial court for entry of a modified order to accurately reflect the verbal rulings placed on the record.

## I.

On September 2, 2011, Montoya was operating a 1994 Honda Accord owned by her live-in boyfriend, defendant Miguel Centeno, in Deal, New Jersey. The Honda Accord was registered to Centeno in North Carolina and insured by Nationwide. Montoya's vehicle struck a vehicle registered to JCP&L, which was being operated by its employee, defendant Alonzo Rawls. Moreno was a passenger in Montoya's vehicle at the time of the accident. Montoya gave the investigating police officer a Maryland driver's license that indicated she lived in Silver Springs. The police report states that the vehicle's owner, Centeno, resided in Charlotte, North Carolina. Centeno's vehicle was insured by

---

[1] GPU Energy's answer to the complaint designated it as "Jersey Central Power and Light Company, i/i/a GPU Energy." We will refer to this defendant as JCP&L.

Nationwide, he was listed as the policyholder, and Montoya was listed as an insured driver.

The record indicates Montoya and Centeno lived together in North Carolina from 2003 to 2009, then moved to Maryland for two months, and then to Asbury Park in 2009, where they have resided ever since. In procuring his automobile policy, Centeno represented to Nationwide that he was married to Montoya, resided in North Carolina, and used a proxy in North Carolina to forward his mail to New Jersey while he lived in Asbury Park.

Montoya and Moreno sustained injuries and underwent medical treatment and fusion surgeries, each ultimately exhausting the $250,000 PIP limit. Nationwide determined that Montoya and Moreno were each entitled to $250,000 in PIP benefits. Nationwide filed a PIP reimbursement complaint against JCP&L under N.J.S.A. 39:6A-9.1. The judge consolidated Nationwide's complaint with the personal injury actions filed on behalf of Montoya and Moreno. Montoya settled her bodily injury claim with JCP&L and Rawls in March 2017, and Moreno's claim was tried and concluded on June 12, 2018.

JCP&L and Rawls (movants) filed a motion for summary judgment in December 2015 arguing: (1) North Carolina law barred a PIP subrogation action in New Jersey; and (2) Nationwide violated North Carolina law by issuing a

policy of insurance to Centeno because he misrepresented the following facts to Nationwide:

- He was residing in North Carolina with Montoya.

- He and Montoya garaged all of their vehicles in North Carolina.

- He and Montoya were married to each other.

Movants argued that, in February 2011, Centeno and Montoya were permanently residing and working in New Jersey. Since 2009, they garaged all of their vehicles in this State. In further support of their motion, movants argued Nationwide committed underwriting errors by issuing a policy to Centeno without first obtaining a signed, written application from him, resulting in the contested PIP payment of $500,000 being made, which Nationwide seeks to recoup from JCP&L, who is self-insured. As a result of another accident, which occurred prior to the September 2, 2011 accident, Nationwide inquired why Centeno was living in New Jersey. Centeno advised Kevin Braswell, a personal lines underwriting manager employed by Nationwide, that Centeno was living in Asbury Park temporarily for two months because his brother found him employment as a floor installer. Centeno advised Braswell that he was still domiciled in North Carolina, prompting Braswell to prepare an adverse risk report.

5

Centeno brought five vehicles from North Carolina to New Jersey. He never registered any of them in New Jersey, and never obtained New Jersey license plates for them. He testified that the Honda Accord was principally garaged in this State at all times up to the date of the subject accident. He never advised Nationwide that he moved to New Jersey because he did not "want to change the insurance, [h]e want[ed] to keep it." Nationwide mailed monthly statements to Centeno's son at his residence in North Carolina, and in turn, Centeno's son forwarded them to his father in New Jersey. Since 2009, Centeno has received water and electric bills at his Asbury Park residence.

Further, movants argued that North Carolina does not require PIP coverage and does not permit PIP subrogation; consequently, there was no PIP coverage provided under the Nationwide policy because PIP coverage was not mandated. The record reveals Centeno and Montoya never paid for PIP premiums in any state. Because of material misrepresentations made by Centeno and Montoya to Nationwide, movants argued Centeno's North Carolina insurance policy should be deemed void. Alternatively, movants argued Nationwide "overpaid" PIP benefits to Moreno and Montoya, and Nationwide should have only paid the New Jersey statutory minimum PIP benefit of $15,000 per person, for a total of $30,000.

A-5281-17T2

At oral argument, Nationwide's counsel argued "[f]or whatever reason[,]" Nationwide paid New Jersey PIP benefits to Montoya and Moreno, to which the motion judge responded, "they were wrong." Nationwide's counsel also argued that Centeno and Montoya "were somewhat living in [New] Jersey" at the time of the accident.

The judge found Centeno and Montoya moved from Maryland to New Jersey and brought five vehicles with them, but never registered or obtained New Jersey license plates for them. The judge ordered:

> (1) "the maximum amount of the PIP subrogation claim by [Nationwide] is the New Jersey statutory minimum PIP amount of $15,000 per person, per accident;"
>
> (2) Montoya is "afforded the New Jersey statutory PIP limit of $15,000";
>
> (3) "Moreno, as an innocent third-party, is afforded the New Jersey statutory PIP limit of $15,000";
>
> (4) The total PIP subrogation claim against JCP&L is, therefore, $30,000;[2] and
>
> (5) JCP&L "is not responsible for the internal errors and omissions made by [Nationwide] in making PIP overpayments in excess of the above amounts"

---

[2] The judge noted in her order the $30,000 "is for the PIP benefits available for [p]laintiff Julia Moreno only[.]" Since this order contains handwritten changes on a proposed form order submitted by counsel for JCP&L, we consider it a ministerial error.

A-5281-17T2

(referring to the amounts in the preceding paragraphs of the order).

The judge denied summary judgment insofar as movants sought a ruling that North Carolina law barred a PIP subrogation action and North Carolina statutes were violated in respect of issuance of the policy of insurance by Nationwide to Centeno and sought dismissal of the PIP reimbursement complaint with prejudice because the subject policy should be declared void ab initio based on Centeno and Montoya's misrepresentations. The judge granted partial summary judgment to JCP&L and determined that each claimant was entitled to $15,000 in PIP benefits, thereby capping JCP&L's obligation at $30,000 in the aggregate, payable to Nationwide.

On appeal, Nationwide argues the judge erred in: (1) finding the amount of PIP benefits an out-of-state insurer must afford to PIP claimants is the statutory minimum under N.J.S.A. 39:6A-4.3(e); (2) awarding Moreno and Montoya $15,000 each in PIP benefits; and (3) finding Nationwide mistakenly provided PIP coverage of $250,000 to each claimant. JCP&L has agreed to pay the $30,000 amount and did not file a cross-appeal relative to the applicability of the Deemer statute. Therefore, we limit our discussion to the issues raised in Nationwide's appeal.

A-5281-17T2

II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must "be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

Nationwide first argues the judge erred in finding the amount of PIP benefits an out-of-state insurer must afford to PIP claimants is the $15,000 statutory minimum found at N.J.S.A. 39:6A-4.3, which provides in relevant part:

> Personal injury protection coverage options. With respect to personal injury protection coverage provided on an automobile in accordance with [N.J.S.A. 39:6A-4], the automobile insurer shall provide the following coverage options:
>
> . . . .
>
> e. Medical expense benefits in amounts of $150,000, $75,000, $50,000 or $15,000 per person per accident; except that, medical expense benefits shall be paid in an amount not to exceed $250,000 for all medically necessary treatment of permanent or significant brain injury, spinal cord injury or disfigurement or for

9

medically necessary treatment of other permanent or significant injuries rendered at a trauma center or acute care hospital immediately following the accident and until the patient is stable, no longer requires critical care and can be safely discharged or transferred to another facility in the judgment of the attending physician.

According to Nationwide, the judge erred as a matter of law because the Deemer statute, which the judge found applicable here, mandates standard New Jersey PIP benefits of up to $250,000 per person per accident, and not $15,000 per person as determined by the judge. Nationwide contends the judge also mistakenly found Nationwide erroneously determined the amount of PIP coverage payable on behalf of Moreno and Montoya, and that JCP&L was not responsible for Nationwide's mistake.

At the outset, Nationwide argues there are inconsistencies between the judge's oral opinion and her handwritten changes to the proposed order prepared by JCP&L. For example, Nationwide argues the judge clearly ruled that JCP&L had no standing to raise any issues in respect of material misrepresentations made by Centeno, but the judge wrote in her order that $15,000 in PIP benefits are to be paid to Moreno "'as an innocent bystander,' [but the] reference to being an innocent bystander to any material misrepresentation[] [was] something the court had actually declined to rule on due to the issues of standing."

Nationwide also points to paragraph eight of the order, which contains edits by the judge providing that Nationwide's claim against JCP&L is $30,000, for PIP benefits available for Moreno only. Nationwide argues this paragraph contradicts paragraph six, which ordered that $15,000 be paid to Montoya, along with paragraph seven, which ordered the same amount to Moreno, for an aggregate sum of $30,000.

Our careful review of the record reveals the order is inconsistent on its face and does not accurately reflect the judge's oral decision. Nonetheless, Nationwide does not argue the outcome is reversible error because the record clearly reflects the judge's decision that the effect of the order was to limit the PIP award to $15,000 for both Moreno and Montoya, for an aggregate total of $30,000, and we agree. We conclude these inconsistencies are scrivener's errors and are not grounds for reversal. On remand, we direct the judge to issue an amended order to accurately comport with her verbal opinion.

III.

Nationwide next argues the judge erred in limiting the amount of available PIP benefits to $15,000 for each claimant and the correct amount should be $250,000. We disagree.

"'PIP' is the popularly used acronym for personal injury protection benefits, a package of benefits required by statute to be provided with every insurance policy for a private passenger automobile registered or garaged in this [S]tate." Craig & Pomeroy, Current N.J. Auto Insurance Law § 4:1 (2019) (hereinafter Craig & Pomeroy). The purpose of the PIP scheme "was to provide a prompt source of first-party recovery for losses sustained in automobile accidents. Under the prior system . . . a victim . . . waited many years to have his claim processed through the courts" and, as a result, the reimbursements for their injuries were delayed and often inadequate. Ibid. The Legislature responded by enacting the 1972 No Fault Act. "Thus, the PIP law mandates speedy first-party payment of a range of benefits, including medical expenses, lost wages, essential services, survivor benefits and funeral expenses to certain classes of persons injured . . . without any consideration of fault[.]" Ibid.

The required coverage must be "the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own." N.J.S.A. 39:6A-4.2. This "first-party coverage was 'intended to serve as the exclusive remedy for payment of out-of-pocket medical expenses arising from an automobile accident.'" Walcott v. Allstate N.J. Ins. Co., 376 N.J. Super. 384,

386, 388 (App. Div. 2005) (quoting Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004)) (permitting a PIP claim by "an insured motorist who was intoxicated at the time of the accident").

With regard to residency and timing, N.J.S.A. 39:3-17.1(b) requires that:

> Any person who becomes a resident of this State and who immediately prior thereto was authorized to operate and drive a motor vehicle . . . in this State as a nonresident pursuant to [N.J.S.A.] 39:3-15 and [N.J.S.A.] 39:3-17, shall register any vehicle operated on the public highways of this State within [sixty] days of so becoming a resident of New Jersey, pursuant to [N.J.S.A.] 39:3-4 or [N.J.S.A. 39:3-8.1].

In short, "N.J.S.[A]. 39:6A-4.5[(a)] bars the culpably uninsured (those vehicle owners required by statute to maintain PIP coverage but who have failed to do so) when injured while operating an uninsured vehicle." Craig & Pomeroy § 15:5-2 (2019); see also Perrelli v. Pastorelle, 206 N.J. 193, 202-03 (2011) (rejecting plaintiff's argument that her belief that the vehicle was insured was enough to preclude the operation of this paragraph).

Furthermore, New Jersey has a strong public policy against the proliferation of insurance fraud. Palisades Safety & Ins. Ass'n v. Bastien, 175 N.J. 144, 151 (2003). The State also has a strong public policy of compensating third parties for losses sustained in automobile accidents. See id. at 152; Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n, 224 N.J. Super. 552, 557-58 (App.

Div. 1988). In other words, "[a] strong public policy favors the protection of the Fund's[3] financial integrity, and thus, the Fund must 'be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom.'" Esdaile v. Hartsfield, 245 N.J. Super. 591, 595 (App. Div. 1991) (citation omitted) (quoting Douglas v. Harris, 35 N.J. 270, 279 (1961)), rev'd on other grounds, 126 N.J. 426 (1992).

The judge found the insurance policy issued by Nationwide to Centeno is subject to the Deemer statute, which states, in pertinent part that:

> Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the [PIP] benefits coverage pursuant to [N.J.S.A. 39:6A-4] or [N.J.S.A. 17:28-1.3] for any New Jersey resident who is not required to maintain [PIP] coverage pursuant to [N.J.S.A. 39:6A-4] or [N.J.S.A. 39:6A-3.1] and who is not otherwise eligible for such benefits, whenever the automobile or motor vehicle insured under the policy is used or operated in this State. In addition, any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control

---

[3] Referring to the fund created by the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 to -90.

by, or with, an insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of [N.J.S.A. 39:6B-1] or [N.J.S.A. 39:6A-3], the uninsured motorist insurance requirements of [N.J.S.A. 17:28-1.1], and [PIP] benefits coverage pursuant to [N.J.S.A. 39:6A-4] or [N.J.S.A. 17:28-1.3], whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

"The Deemer [s]tatute is so named because it 'deems' New Jersey insurance coverage and tort limitations to apply to out-of-state policies." George J. Kenny & Frank A. Lattal, New Jersey Insurance Law § 14-6:6 (2019) (footnote omitted). In analyzing a policy under the Deemer statute, AICRA[4] provided for the creation of two insurance coverage options: a basic policy and a standard policy. A standard policy is defined as:

one with at least the coverage required by N.J.S.A. 39:6A-3 and [-4]. N.J.S.A. 39:6A-3 mandates compulsory automobile insurance liability limits of $15,000[] on account of injury to or death of one person in any one accident, a limit of $30,000[] for injury to or death of more than one person in any one accident and $5,000[] for damage to property in any one accident, all exclusive of interests and costs.

[Id. at § 14-10.]

---

[4] Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-1.1 to -35.

Where the Deemer statute is inapplicable, an ordinary choice of law analysis applies when there is a conflict with New Jersey insurance law.  Id. at § 21-10.  As a general rule, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under an insurance policy "unless the dominant and significant relationship of another state to the parties and the underlying issue dictates" otherwise.  State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 37 (1980); see also Gen. Metalcraft, Inc. v. Liberty Mut. Ins. Co., 796 F. Supp. 794, 796-97 (D.N.J. 1992) (quoting State Farm Mut. Auto Ins. Co., 84 N.J. at 35) ("[T]his rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law."); Polarome Mfg. Co. v. Commerce & Indus. Ins. Co., 310 N.J. Super. 168, 173 (App. Div. 1998).  In the insurance law arena, courts must focus on the parties' "justified expectations and their needs for predictability of result."  Pfizer, Inc. v. Emp'rs Ins. of Wausau, 154 N.J. 187, 199 (1998).  "Auto insurance policies are [generally] written to satisfy particular states' requirements for autos registered and garaged there."  Rutgers Cas. Ins. Co. v. State Farm Mut. Ins. Co., 234 N.J. Super. 202, 205 (App. Div. 1989).

Choice of law is a matter of law which we review de novo.  N. Jersey Neurosurgical Assocs., P.A. v. Clarendon Nat'l Ins. Co., 401 N.J. Super. 186, 191 (App. Div. 2008).  As the forum state, New Jersey's choice of law principles apply.  Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007); Erny v. Estate of Merola, 171 N.J. 86, 94 (2002); Moper Transp., Inc. v. Norbet Trucking Corp., 399 N.J. Super. 146, 153 (App. Div. 2008).  Our State employs the most significant relationship test in resolving choice of law questions in tort actions.  See In re Accutane Litig., 235 N.J. 229, 260 (2018).  In Calabotta v. Philbro Animal Health Corp., ___ N.J. Super. ___, ___ (App. Div. 2019), we analyzed which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6."  Second Restatement § 145(1), (2).  Those contacts include

> (a)  the place where the injury occurred,
>
> (b)  the place where the conduct causing the injury occurred,
>
> (c)  the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>
> (d)  the place where the relationship, if any, between the parties is centered."
>
> [Calabotta, __ N.J. Super. at __ (slip op. at 19) (quoting Second Restatement § 145(2)).]

Here, the judge ruled:

> JCP&L argues that North Carolina law governs the dispute because of the policy's choice of law provision. North Carolina has an anti-subrogation law, [11 N.C. Admin. Code 12.0319 (2019)][,] which provides that, "Life or accident and health insurance forms shall not contain a provision allowing subrogation of benefits." This would prohibit Nationwide's subrogation action.
>
> "Ordinarily when parties to a contract have agreed to be governed by the law of a particular state, New Jersey [c]ourts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional [Sys.], [Inc.] [v.] [Comput.] Curriculum Corp., 130 N.J. 324, 341 (1992).
>
> In this case however the choice of law provision does not control since . . . JCP&L and Rawls were not parties to the policy contract.

Based on this reasoning, the judge correctly rejected JCP&L's argument that Centeno's alleged fraudulent misrepresentations subjected his policy to rescission by JCP&L.

Nationwide argues the standard automobile liability policy under N.J.S.A. 39:6A-4 means and includes payment of medical expenses of up to $250,000 per person per accident but, in spite of this, the judge erroneously determined the minimum statutory amount of PIP found elsewhere in the no-fault statute would dictate the amount of PIP coverage that Nationwide was obligated to pay on behalf of Moreno and Montoya. Moreover, Nationwide posits the provision that

the court relied on, "Personal injury protection coverage options," N.J.S.A. 39:6A-4.3, is not incorporated into the Deemer statute; therefore, the judge erroneously "conflated two separate statutes[:] N.J.S.A. 39:6A-4, which provides for standard PIP coverage and is incorporated into the Deemer [s]tatute, and N.J.S.A. 39:6A-4.3(e), which allows New Jersey consumers to purchase certain optional coverages[.]"

In her decision, the judge relied upon Cooper Hospital University Medical Center v. Prudential Insurance Company, 378 N.J. Super. 510, 515 (App. Div. 2005), where we held that the policy is required to provide "minimum 'standard policy' PIP benefits, as required by N.J.S.A. 39:6A-4." The judge went on to find that $15,000 is

> the amount that Nationwide would be entitled to seek as reimbursement. The fact that it paid more than the statutory requirement was done at its own risk. And JCP&L should not be caused to bear the cost voluntarily incurred by Nationwide and which did not fall within the requirements of [N.J.S.A.] 39:6A-9.1.

We agree. Nationwide mistakenly construes the judge's decision by generalizing that $15,000 is the only sum an out-of-state insured may seek in PIP compensation under the Deemer statute.

"Subrogation[5] is an equitable doctrine that permits a party paying a loss incurred by a second party to step into the shoes of that second party and exercise any rights the second party may have against a wrongdoer whose conduct caused or contributed to the loss."  Craig & Pomeroy § 25:3-1 (2019).  "The [subrogation] rights acquired by insurers . . . depend entirely on the rights their insureds would have against the tortfeasor."  Ibid.

> The underpinning of subrogation is its derivative nature.
>
> . . . .
>
> Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. This principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter . . . .
>
> Furthermore, it is immaterial whether the subrogor's cause of action is created by statute, arises because of judicially ascribed equities or exists because of a conventional agreement of the parties.
>
> [Ibid. (quoting Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 560-61 (1981)).]

---

5  In New Jersey, subrogation and PIP reimbursement claims are often referred to as PIP reimbursement claims.

Here, the judge aptly found Nationwide, as subrogor on behalf of Moreno and Montoya, was only entitled to seek $15,000 for each victim, for a combined total of $30,000, because that is the minimum amount its subrogees were entitled to as a matter of right. Any less than $15,000 would have been violative of their rights under the Deemer statute, and any more than $250,000 would violate the Deemer statute maximum. It is unclear why Nationwide paid full PIP benefits to the victims, but payment of the $250,000 amount by Nationwide does not create a right of subrogation of the maximum amounts reimbursable to Nationwide. Nationwide cannot shift its underwriting mistake to JCP&L.

IV.

Nationwide next argues the judge erred in finding Nationwide mistakenly provided PIP coverage of $250,000 per victim because testimony from Braswell does not support this conclusion, whereas the judge found it did. The judge stated:

> Braswell testified in this matter that while New Jersey has PIP, North Carolina does not. And it appears that the record would support a finding that Nationwide erroneously determined that it was obligated under the circumstances of this case to provide PIP benefits to Montoya and Moreno, notwithstanding the fact that there's no PIP coverage under the policy. And that their required limit under that circumstance would be $250,000.

21

Nationwide does little more than allege that the judge made an incorrect, factual conclusion and it simply rests on its argument without drawing a tangible nexus between the purported error and the judge's conclusion that Nationwide was not entitled to a full PIP reimbursement from JCP&L.  Saliently, whether Nationwide's decision to provide full PIP benefits was mistaken or not, it does not change the outcome here, and we do not perceive any reversible error.

We have carefully reviewed Nationwide's remaining arguments and have determined they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed and remanded for the judge to issue an amended order to comport with her verbal opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5281-17T2